would not be made by a prudent man. I see no reason why a court of equity should refuse to carry out the exact agreement of the parties, especially as the plaintiff offers to pay all the pecuniary consideration there ever was for his offer. He asks that his conveyance may be treated as a mortgage to secure his debt to the estate, which is all that equity can ask under the circumstances.

It is by no means accurate to say that equity takes no note of time. The general rule in equity, as at law, is, that parties may make their own bargains, and must keep them. Equity is very unwilling that an estate should be forfeited by mere neglect to keep an appointment for the payment of money at the day agreed on. The early application of this doctrine to mortgages, by which an equity of redemption was created, was eminently just, and was acquiesced in; though of late years all persons have agreed on a form of mortgage which very much modifies this equity, by giving the mortgagee a power of sale on short notice. Its application to a failure to pay rent at the day was just, and was adopted by the common-law courts in Massachusetts, when there was no court of chancery in this state. Equity carries its objections to a forfeiture so far, that, in an ordinary contract to buy and sell land, it is unwilling that a good bargain shall be lost by unpunctuality; but, in this class of cases, the exceptions embrace more cases than the rule. Indeed, the doctrine itself is exceptional, and is explained by Mr. Justice Story, quoting and approving Baron Alderson, as being only this, that equity has power to carry out what seems to be the true intent of the parties; and if there are no circumstances to show that either party would suffer any hardship, or that any equitable consideration existed against it, the court will presume that the sale was the main thing, and the precise time of completing it was not essential. Story, Eq. Jur. § 776, note 1. "But, then, in such cases," the learned author proceeds to say, "it should be clear that the remedies are mutual: that there has been no change of circumstances affecting the character or justice of the contract; that compensation for the delay can be fully and beneficially given," &c. Section 776.

That time was not considered very material by the parties when they made this arrangement, I think highly probable. If either party had preferred to fix five months or seven months, rather than six, no doubt the other would have agreed to it. In that sense, time was not essential. But the change of values is so very considerable, that it has become inequitable for a court to make a new contract for the parties, and no court will do so after such a change. Brashier v. Gratz, 6 Wheat. [19 U. S.] 528; Barnard v. Lee, 97 Mass. 96, per Gray, J., explaining Goldsmith v. Guild, 10 Allen, 239; Story, Eq. Jur. § 776; Adams. Eq. 88.

Decree for an account and reconveyance, on the plaintiff's paying what may be found due by Theodore Prentice to the bankrupt's estate.

---

PRENTICE v. LANE. See Case No. 11,383.

---

## Case No. 11,382.
PRENTICE et al. v. NOE.

[See Case No. 10,284.]

---

PRENTICE (UNITED STATES v.). See Case No. 16,083.

---

## Case No. 11,383.
PRENTICE et al. v. ZANE.

[11 Law Rep. 204.]

District Court, W. D. Virginia.    Sept. 9, 1846.

NOTES—FRAUDULENT CONSIDERATION—BONA FIDE HOLDER FOR VALUE.

1. If the consideration of a note be fraudulent between the original parties, a subsequent holder will be held to strict proof that he paid value for it.

2. The exposition of the statutes of any state, by the courts of that state, is always regarded as of binding authority in the construction of such statutes by courts of other states.

3. The case of Swift v. Tyson, 16 Pet. [41 U. S.] 18, explained.

4. A promissory note or bill of exchange, which is made negotiable by the law of Pennsylvania, and is transferred to the holder as collateral security, merely for an antecedent debt or liability, without notice of fraud, will not confer such a title on the holder as will exclude all equities between the maker and the payee, or any previous holder.

This was an action of debt brought on a promissory note, made by the defendant, payable to the order of James H. Johnson, in the following words: "$5437.50. Philadelphia, Nov. 28, 1836. Five years after date I promise to pay to the order of James H. Johnson, five thousand four hundred and thirty-seven dollars and fifty cents, without defalcation, for value received. Platoff Zane." The suit was brought by the plaintiffs as indorsees of the payee; Johnson and the defendant pleaded nil debet, in which the plaintiffs joined. Upon the trial of the cause, the jury found, by a special verdict, that the note was made in Philadelphia; that the consideration was fraudulent; that it was indorsed in blank, in Kentucky, by the payee and delivered before maturity, to one Stivers, and by him delivered without indorsement to the plaintiffs, before maturity and without notice of the fraudulent consideration; and that there was a statute in Pennsylvania which declared that a promissory note "shall be held by the indorsee, discharged from any claim of defalcation or set-off by the drawers or indorsers thereof; and the indorsee shall be entitled to recover against the drawer and indorser, such